**In re Richard W. CANDLAND, Debtor.**

**Richard W. CANDLAND, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 94–55631.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1996.

Decided July 25, 1996.

As Amended Oct. 2, 1996.

David R. Weinstein, Weinstein & Eisen, Los Angeles, California, for appellant.

Roy G. Weatherup, Haight, Brown & Bonesteel, Santa Monica, California, for appellee.

Before: BROWNING, WALLACE, and FARRIS, Circuit Judges.

WALLACE, Circuit Judge:

Candland disagreed with the opinion of the Bankruptcy Appellate Panel (BAP), which affirmed the bankruptcy court, concluding that Candland's debt to the Insurance Company of North America (INA) was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The bankruptcy court exercised jurisdiction under 28 U.S.C. § 157(b)(1), and we have jurisdiction under 28 U.S.C. § 158(d). We affirm.

I

Candland is an experienced businessman who holds numerous degrees and licenses, including a law degree, securities license, insurance license, annuity license, and real estate license. Candland was engaged in the business of soliciting investors for sophisticated real estate limited partnerships. In 1984, Candland invested in the Fort Worth Willows Limited Partnership (Partnership) and executed promissory notes to the Partnership. In order to obtain additional capital, the Partnership attempted to assign the notes to a financial institution, and the financial institution required Candland to find a guarantor for his payment on the notes.

Candland applied to INA for bonds which would guarantee his payment on the notes. According to its practice, INA would issue financial guarantee bonds based upon the applicant's financial statements and the recommendation of Waite Hill Services (Waite Hill), a contractor which underwrote and administered INA's investor bond program. Waite Hill would determine whether an applicant was creditworthy and capable of fulfilling his obligations. Candland therefore submitted an investor bond application as well as a financial statement, which provided current information as of January 31, 1984.

The application was reviewed by underwriting coordinator Frayser. His review primarily consisted of an analysis of the financial statement to determine whether certain preestablished requirements related to liquidity, net worth, and income were met. Frayser customarily compared information such as an applicant's address and social security number as stated on the financial statement with information provided by a credit report. He also looked to the credit report to provide some level of confidence that an applicant faced no outstanding judgments and was in a position to repay debts.

Approximately 1985, Candland defaulted on his payment of the promissory notes. The holder of the notes called on INA to perform its obligations under the financial guarantee bonds. INA paid over $210,000 on Candland's behalf. INA then sought reimbursement from Candland pursuant to the indemnification agreement between them. Candland refused to pay, and INA obtained a stipulated judgment from the Los Angeles Superior Court for $281,289.79, plus 10% interest from October 14, 1988.

On June 8, 1990, Candland filed a bankruptcy petition under Chapter 11, and on July 26, 1990, INA filed a proof of claim for $317,430.93. On September 11, INA filed a complaint to deny Candland a discharge and to declare nondischargeable the debt owed to INA on the ground that Candland knowingly provided false information on his financial statement. After trial, the bankruptcy court refused discharge under 11 U.S.C. § 727(a)(4)(A) and held that the debt owed to INA was nondischargeable under 11 U.S.C. § 523(a)(2)(B). The bankruptcy court also awarded attorneys' fees to INA. Candland appealed to the BAP, which affirmed all of the bankruptcy court's rulings, except attorneys' fees. Before us, Candland appeals only the bankruptcy court's ruling that his INA debts were nondischargeable under 11 U.S.C. § 523(a)(2)(B).

## II

We apply a clearly erroneous standard to the bankruptcy court's findings of fact and review its conclusions of law de novo. *In re Weisman,* 5 F.3d 417, 419 (9th Cir.1993). We independently review the bankruptcy court's rulings on appeal from the BAP. *In re Pace,* 67 F.3d 187, 191 (9th Cir.1995).

Whether a creditor relied upon false statements is a question of fact which is reviewed under a clearly erroneous standard. *In re Kirsh,* 973 F.2d 1454, 1456 (9th Cir. 1992) (*Kirsh*). The clearly erroneous standard also applies to findings of intent to defraud, to findings that the fraud proximately caused the alleged damages, *In re Rubin,* 875 F.2d 755, 758 (9th Cir.1989), and to materiality. *In re Lansford,* 822 F.2d 902, 904 (9th Cir.1987) (*Lansford*) ("[w]hether the misrepresentations were material under the circumstances, whether there was reasonable reliance, and whether there was intent to deceive are issues of fact").

Candland challenges the bankruptcy court's determination that his debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), which prevents the discharge in bankruptcy of debts obtained through false representation. The statute reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . . .

(Footnote omitted.) These elements must be proven by a preponderance of the evidence in order to render a debt nondischargeable. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). We have reworded these requirements as follows:

(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable,

(7) that damage proximately resulted from the representation.

*In re Siriani,* 967 F.2d 302, 304 (9th Cir. 1992) (*Siriani*).

Candland asserts that his financial statements were neither false nor material. Even if his statements were materially false, Candland further argues that INA did not reasonably rely on these statements nor did they proximately cause INA's decision to issue the guarantee bonds. Last, he argues that he lacked the requisite intent to deceive.

## III

Candland unpersuasively contends that INA did not prove that he submitted false statements. Candland submitted on his 1984 disclosure statement that he held certain pensions and annuities with values totaling $1,071,709. He derived this amount by summing their future payments. A person of Candland's business sophistication would know that the appropriate valuation method was to discount the future payments to present value. Candland's statement as to the value of the annuities and pensions contained an implied assertion that he had discounted. In addition, Candland omitted to list several notes payable, which totalled over $150,000. The bankruptcy court did not commit clear error in holding that Candland made false statements inflating the value of his assets

and failing to disclose the extent of his liabilities.

The bankruptcy court also held that Candland's projections of his future net income were false statements on which INA could rely. Whether a lender can rely on a borrower's projections presents a difficult question, *see Prosser and Keeton on Torts,* § 109 (5th ed. 1984) (*Prosser & Keeton* ). We need not reach this issue because either false statement discussed above satisfies the requirements of section 523(a)(2)(B).

## IV

■ After affirming the bankruptcy court's determination that there were knowing misrepresentations of facts (the 1984 income projections, the undiscounted valuation of Candland's annuity, and the incomplete listing of liabilities), we must now consider the bankruptcy court's finding that these statements were material. *Siriani,* 967 F.2d at 304.

INA contends, and the bankruptcy court agreed, that any intentional misstatement would have resulted in rejection of Candland's application; therefore, virtually any misrepresentation would be material. Candland argues that the bankruptcy court confused the falsity and materiality determination: that any falsity would be material. In addition, Candland maintained at oral argument that even if he had provided truthful information in his financial statement, INA would have issued the bonds. Thus, the untruthful statements could not be material as they had no determinative effect upon the lender's decision. Analysis of this materiality issue is difficult, because we have yet to adopt an explicit standard of materiality for section 523(a)(2)(B).

■ The bankruptcy court relied on a Seventh Circuit case which focused on "whether the lender would have made the loan had he known of the debtor's true financial condition." *See Matter of Bogstad,* 779 F.2d 370, 375 (7th Cir.1985). The bankruptcy court also found materiality under a less stringent materiality definition suggested by the BAP:

A statement can be materially false if it includes information which is "substantial-

ly inaccurate" and is of the type that would affect the creditor's decision making process. To except a debt from discharge, the creditor must show not only that the statements are inaccurate, but also that they contain important and substantial untruths.

*In re Greene,* 96 B.R. 279, 283 (9th Cir. BAP 1989) (citations and quotations omitted).

Our previous decisions have, in general, adopted a knowing or intentional misstatement requirement for section 523(a)(2)(B). *See Siriani,* 967 F.2d at 304. Therefore, INA's argument that any intentional misstatement constitutes a material misstatement renders the materiality requirement surplusage.

■ At least for the purposes of section 523(a)(2)(B), where precedent has already included reliance and causation requirements, we adopt the above quoted formulation stated by *In re Greene* for a materiality standard. Material misrepresentations for this statutory section are substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision. This definition builds upon *Lansford,* which concluded that a "finding of materiality is supported by the multiple misrepresentations contained in the financial statement as to assets and their value." *Lansford,* 822 F.2d at 904. Certainly, in this case, significant misrepresentations of financial condition—of the order of several hundred thousand dollars—are of the type which would generally affect a lender's or guarantor's decision. The misrepresentations are, therefore, material.

## V

■ Under *Siriani,* a material misrepresentation alone does not result in nondischargeability under section 523(a)(2)(B). In addition, the debtor must know the misrepresentation to be false; the creditor must have placed reasonable reliance upon the misrepresentation; and the misrepresentation must proximately cause the damages suffered. *See Siriani,* 967 F.2d at 304. Candland argues that INA did not reasonably rely on the misrepresentations, and that the misrepre-

sentations did not proximately cause INA's losses.

### A.

We have not been more specific than the statute in defining reasonable reliance under section 523(a)(2)(B). Candland asks us to incorporate a new definition which we have adopted for 11 U.S.C. § 523(a)(2)(A) cases. *See Kirsh,* 973 F.2d at 1460 (applying a justifiable reliance test). Section 523(a)(2)(A) deals with "representations other than those respecting the debtor's financial condition" while section 523(a)(2)(B) refers "specifically to written statements of financial condition." *Id.* at 1457. But *Kirsh* went through its extended analysis because section 523(a)(2)(A) does not provide a reliance standard. In contrast, section 523(a)(2)(B) explicitly states "reasonable reliance" as the appropriate standard. Reasonable reliance is a term courts can apply without additional help.

Candland contends that INA could not reasonably rely on his assertions without investigation. Under the circumstances found here, we require little investigation. *Lansford,* 822 F.2d at 904; *see Prosser & Keeton,* § 108 at 752 ("assertions of fact as to ... [the] financial status of corporations, and similar matters ... may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult ... but likewise where the falsity of the representation might be discovered with little effort by means easily at hand") (footnotes omitted). Following *Lansford,* we hold that whatever duty to investigate exists in this circuit, *see, e.g., Kentile Floors v. Winham,* 440 F.2d 1128, 1132 (9th Cir.1971), was easily satisfied in this case. INA reasonably relied on Candland's representations under section 523(a)(2)(B).

### B.

We now turn to the proximate cause requirement under section 523(a)(2)(B). In *Siriani,* we reversed a bankruptcy court which found that a fraud did not proximately cause the creditor's losses because the creditor did not demonstrate that it would have exercised its collection rights. We reasoned that although it was certainly possible that the creditor would not have exercised its collection rights, this possibility was not enough to prevent a finding of proximate cause. We declined "to require bankruptcy courts to divine what might have happened." *Siriani,* 967 F.2d at 306. *Siriani* concluded that proximate cause is something more than "speculation as to what the creditor might have done in hypothetical circumstances" and that proximate cause inevitably "turn[s] upon conclusions in terms of legal policy." *Id., quoting In re Britton,* 950 F.2d 602, 604 (9th Cir.1991), *quoting Prosser & Keeton,* § 42 at 273.

Candland's proximate causation argument is less than clear. He apparently contends that there is some evidence which supports his contention. INA responds that the issue is foreclosed by the bankruptcy court's finding that any material misrepresentation would have resulted in INA's refusal to issue bonds.

Considering that the falsehoods were material and involved significant amounts of money, the bankruptcy court's finding is not clearly erroneous and the requirement of proximate cause is thereby satisfied. If we were to rule that there was no proximate causation because the bonds would have been issued even with the true information, we would indulge in the type of speculation which *Siriani* specifically forbids.

### VI

The bankruptcy court found the requisite intent. Candland's argument opposing this finding does not explain his failure to list certain liabilities or to calculate his expected income reasonably. The bankruptcy court's finding was not clearly erroneous. The intent requirement under section 523(a)(2)(B) was met.

### VII

Candland knowingly and intentionally submitted falsehoods on his financial disclosure statement upon which INA reasonably relied and which proximately caused INA's losses.

We hold Candland's debts nondischargeable pursuant to section 523(a)(2)(B).

AFFIRMED.