NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-11-1317-CaPaMk |
| ) | |
| PETER DAVID KEMPF, ) | Bk. No.   8:09-bk-16783-TA |
| ) | |
| Debtor. ) | Adv. No.   8:09-AP-01661-TA |
| _____) | |
| ) | |
| PETER DAVID KEMPF, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| HITACHI CAPITAL AMERICA CORP.,) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on January 19, 2012
at Pasadena, California

Filed - February 14, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:   Allan Leguay of the Law Offices of Allan Leguay,
argued on behalf of Appellant Peter David Kempf;
Frank T. Pepler of DLA Piper (US), LLP, argued on
behalf of Appellee Hitachi Capital America
Corporation.

Before: CASE[2], PAPPAS, and MARKELL, Bankruptcy Judges.

[1]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]Hon. Charles G. Case II, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

In this appeal, Debtor/Appellant Peter David Kempf ("Kempf") argues that: (1) the bankruptcy court erred in deciding that Creditor/Appellee Hitachi Capital America Corporation's ("Hitachi") amended complaint (the "First Amended Complaint"), on which trial was held, related back to its initial complaint that initiated the action (the "Original Complaint"); (2) this Panel should review the bankruptcy court's factual findings de novo; and (3) the bankruptcy court erred in concluding that Hitachi reasonably relied on Kempf's fraudulent financial statement in extending credit to Kempf's business, CardioCura Capital West, LLC ("CardioCura"), thereby excepting Hitachi's claim based on Kempf's guaranty from discharge under section 523(a)(2)(B) of the Bankruptcy Code[3]. For the reasons below, we AFFIRM.

## I. Facts

Kempf was the principal and owner of CardioCura, a start-up mobile CT business, and Hitachi is an equipment lessor. In January 2006, CardioCura, through Kempf, signed a $1,400,000 lease financing proposal for a mobile Phillips CT device that included a proposed limited personal guaranty from Kempf (the "Guaranty").

In February 2006, Hitachi prepared a transaction analysis that analyzed CardioCura's: (1) feasibility; (2) working capital, including Kempf's $300,000 contribution; (3) projected gross and

---

[3]Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, all "Civil Rule" references are to the Federal Rules of Civil Procedure, 1-86, and all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101-1103.

2

net revenue; (4) risks; and (5) credit enhancements, including Kempf's $600,000 Guaranty (later increased to $736,538). Kempf also provided Hitachi with his and his wife's: (1) 2003 and 2004 joint tax returns; and (2) a joint personal financial statement (the "Financial Statement"), that indicated the Kempfs' net worth to be $4,207,084, including a $2,699,188 investment known as the Angel Trust (the "Trust"). While the tax returns suggest that Kempf's wife is the sole beneficiary of the Trust, no such reference is made on the Financial Statement. It was undisputed at trial that Kempf had no right of access to the assets of, or income from, the Trust.

Hitachi lent CardioCura $1,440,000 on March 16, 2006 (the "Loan"), and CardioCura executed a master equipment lease (the "Lease") on March 22, 2006. The Lease went into default in August 2007, and Hitachi obtained a California state court judgment against CardioCura for $1,410,635.37 and Kempf for $736,538.

Kempf filed his Chapter 7 petition on July 7, 2009; his schedules made no reference to the Trust. Hitachi timely filed an adversary proceeding to determine the state court judgment's dischargeability.

In its Original Complaint, Hitachi relied on section 523(a)(2)(A), claiming that Kempf obtained the Loan through fraud. Hitachi's First Amended Complaint, filed December 31, 2009, included a second claim for relief based on section 523(a)(2)(B), claiming that Kempf obtained the Loan through use of a false financial statement. Hitachi argued that Kempf knowingly misrepresented his net worth because he knew that he

3

held no interest in the Trust, which constituted a major percentage of his purported net worth. Kempf filed a motion to dismiss the First Amended Complaint arguing that it did not relate back to the Original Complaint under Civil Rule 15, incorporated in Rule 7015, and therefore was untimely. The bankruptcy court denied the motion.

At trial, the bankruptcy court found that Kempf knew that neither Kempf nor the community had an interest in the Trust and that including it in the Financial Statement was a false representation that he and the community did have such an interest. The bankruptcy court noted that Kempf was a sophisticated businessman and knew that it was highly unlikely that Hitachi would lend him capital for a start-up business if he did not include the Trust as part of his net worth. It also noted that no evidence was presented to suggest that the issue was "red-flagged" for review regarding Kempf's Financial Statement. The bankruptcy court found that: (1) the Financial Statement as written was materially false; (2) Kempf had a duty to make the status of the Trust clear; (3) Kempf intended to deceive Hitachi when he prepared and submitted the Financial Statement, which showed a higher net worth than in reality; and (4) Hitachi reasonably relied on Kempf's Financial Statement in extending credit to him. The bankruptcy court entered judgment in favor of Hitachi on June 9, 2011, holding Hitachi's state court judgment against Kempf non-dischargeable under section 523(a)(2)(B). Kempf filed a timely appeal from the judgment on June 21, 2011.

4

## II. Jurisdiction

The bankruptcy court had jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1)(I). This Panel has appellate jurisdiction pursuant to 28 U.S.C. § 158.

## III. Issues

Did Hitachi's First Amended Complaint relate back to the facts alleged in its Original Complaint under Civil Rule 15, as made applicable by Rule 7015?

What standard of review should the Panel apply to the factual findings in this case?

Did Hitachi reasonably rely on Kempf's fraudulent financial statement as required under section 523(a)(2)(B)?

## IV. Standards of Review

We review a bankruptcy court's statutory construction and conclusions of law, including interpretation of Bankruptcy Code provisions, de novo. Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.), 319 F.3d 1166, 1170 (9th Cir. 2003); see Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007), aff'd in part, vacated in part, rev'd in part, 581 F.3d 1090 (9th Cir. 2009); USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 887-88 (9th Cir. 2010).

We review the bankruptcy court's factual findings, including a finding that a creditor reasonably relied upon false financial statements, under the clearly erroneous standard. Fed. R. Bankr. P. 8013; see Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997); Hansen v. Moore (In re Hansen), 368 B.R. 868, 875 (9th Cir. BAP 2007); Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996); see also Mendez v.

5

Salven (In re Mendez), 367 B.R. 109, 113 (9th Cir. BAP 2007); Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 32 (9th Cir. BAP 2008). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985); see Mendez, 367 B.R. at 113. If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson, 470 U.S. at 573-75; see Hansen, 368 B.R. at 874-75.

Whether an amended complaint relates back to the date of the original under Civil Rule 15 is a legal question that is reviewed de novo. Dominguez v. Miller (In re Dominguez), 51 F.3d 1502, 1509-10 (9th Cir. 1995); see also Magno v. Rigsby (In re Magno), 216 B.R. 34, 37-38 (9th Cir. BAP 1997).

**V. Discussion**

A. Relation Back of Hitachi's First Amended Complaint to the Original Complaint

Kempf moved to dismiss Hitachi's First Amended Complaint on the grounds that the second claim for relief did not relate back to the Original Complaint and therefore was time-barred under Rule 4007(c). He claimed that the First Amended Complaint did not arise out of the same conduct, transaction, or occurrence set forth in the Original Complaint because it "outlined a new set of facts and legal theories involving a previously unmentioned Angel Trust . . . and completely new allegations under Section 523(a)(2)(B) of the Bankruptcy Code." Aplt ER p. 28.

Hitachi argued that its Original and First Amended

6

Complaints both relate to Kempf's intentional, willful, wanton, and/or negligent signing of the Lease and Guaranty with no intent to repay the Loan. It argued that Counts I and II both arise out of the same underlying Loan transaction to CardioCura and Kempf's inducement of Hitachi to enter into the Loan by fraud. Additionally, Hitachi noted that it only discovered evidence relating to Count II after Kempf admitted in his adversary proceeding deposition to having no property rights in the Trust. Therefore, Hitachi claimed that it was "disingenuous for Debtor to claim that Hitachi's further allegations of fraud, **which Debtor concealed from Hitachi . . .** prejudices this bankruptcy discharge." Aple. ER 232 (emphasis in original). The bankruptcy court denied Kempf's motion.

An amendment to a pleading relates back to the date of the original pleading when it asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out in the original. See Fed. R. Civ. P. 15(c)(1)(B); Fed. R. Bankr. P. 7015. This link will be found when the claim to be added is likely to be proven by the same kind of evidence that would be used to support the original pleading. Magno, 216 B.R. at 39; see Dominguez, 51 F.3d at 1510. The relation back doctrine is liberally applied, and its basic criterion is whether the original complaint gave the defendant enough notice of the nature of the plaintiff's claim so that he should not have been surprised by the amplification of the allegations. Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 573 (7th Cir. 2006); see Miller v. Am. Heavy Lift Shipping, 231 F.3d 242, 248 (6th Cir. 2009); Tiller v. Atl. Coast line R. Co., 323 U.S. 574, 581

7

(1945); Rural Fire Prot. Co. v. Hepp, 366 F.2d 355, 362 (9th Cir. 1966). Thus, if one can fairly perceive some relationship between what was pleaded in the original and amended complaints, the amended complaint will relate back. Gelling v. Dean (In re Dean), 11 B.R. 542, 545 (9th Cir. BAP 1981).

Hitachi's Original Complaint alleged fraud and misrepresentation under section 523(a)(2)(A) relating to Kempf's promise to pay his Guaranty. The First Amended Complaint added allegations under section 523(a)(2)(B) stating that Kempf fraudulently included a high asset entity in his Financial Statement in order to induce Hitachi to lend to CardioCura. While Hitachi's First Amended Complaint includes an additional claim for relief, both complaints concern Kempf's alleged fraudulent misrepresentations made to secure the Lease and will likely be proven by the same kind of evidence – the Lease, statements Kempf made to secure the Lease, documents relating to Lease, etc. Kempf even admits that "the two complaints share the fact that they arise out of the same [L]ease transaction." Aplt. Br. 25.

Because both Hitachi's Original and First Amended Complaints are based upon events and circumstances surrounding Kempf's execution and delivery of the Lease and Guaranty with no intention of repayment, the Original Complaint gave Kempf enough notice about the nature of Hitachi's claim so that he would not be surprised by the additional allegations in the First Amended Complaint. Thus, the bankruptcy court did not err in holding that Hitachi's First Amended Complaint related back to the Original Complaint under Civil Rule 15(c)(1)(B).

8

B.  The standard under which this Panel will review the bankruptcy court's factual findings

It is a well-known rule in the federal courts generally, and the Ninth Circuit specifically, that findings of fact are reviewed on appeal under a clearly erroneous standard. See Lawson, 122 F.3d at 1240; Hansen, 368 B.R. at 874-75; Candland, 90 F.3d at 1469; see also Mendez, 367 B.R. at 113; PW, LLC, 391 B.R. at 32. Kempf contends that because the bankruptcy court was presented with uncontested facts and did not make credibility determinations, the facts should be reviewed de novo since the "evidentiary palate" here is identical to that of summary judgment.

In support of this argument, Kempf cites to In re Burdge, where the panel applied de novo review because the facts were undisputed. AT&T Universal Card Servs. v. Burdge (In re Burdge), 198 B.R. 773, 776 (9th Cir. BAP 1996). The Burdge panel noted that factual findings are reviewed under the clearly erroneous standard and legal conclusions are reviewed de novo; and it concluded that because there were no facts in dispute, the only issue was a question of law to be reviewed de novo. Burdge, 198 B.R. at 776. Burdge, therefore, does not stand for the proposition that both facts and law may be reviewed de novo but merely reasserts the established legal rule that legal conclusions are reviewed de novo. Id.

While Kempf is correct that summary judgment determinations are reviewed de novo, this case is not remotely similar to a summary judgment case because there were a number of facts in dispute and credibility determinations were made. See Padfield

9

v. AIG Life Ins. Co., 290 F.3d 1121, 1124 (9th Cir. 2002); Turtle Rock Meadows Homeowners Ass'n. v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

A review of the record reveals a number of factual disputes. Even with only Hitachi's witness, Donald O. Link, present at trial, the trial ran for approximately five hours and included a thorough cross and re-cross examination of Mr. Link by Kempf's counsel, which was quite hostile at times. During Mr. Link's cross-examination, Kempf's attorney asked whether CardioCura's business plan was the reason Hitachi entered into the Lease and Guaranty. Mr. Link disagreed with this conclusion stating that Hitachi entered the Lease because it approved the structure of the transaction. While Mr. Kempf's counsel tried to elicit from Mr. Link that the Trust was important for the transaction's approval, Mr. Link pointed out that Kempf's representations on his Financial Statement as a whole, and not necessarily only the representations of the Trust, were important in the transaction.

At another point in the cross-examination, Kempf's attorney tried to impeach Mr. Link by arguing that he presented conflicting facts in his deposition as compared to his trial testimony regarding his exposure to the transaction at issue. Even the bankruptcy court noted that Kempf's counsel was making "a very questionable assertion" from Mr. Link's declaration, his testimony, and documents entered into evidence that the Trust was the most important element in Hitachi's agreement to extend credit to CardioCura. Hr'g Tr. 53:23.

A simple review of the record establishes that many facts were in dispute and that the bankruptcy court was left with a

10

number of credibility determinations after the cross, redirect, and re-cross examination of the only witness.  Therefore, clearly erroneous is the correct standard of review with respect to the bankruptcy court's factual findings.

      C.  The level of reliance required by creditors for section 523(a)(2)(B) non-dischargeability complaints

Kempf argues that the bankruptcy court erred by absolving Hitachi of any duty to make even a minimal inquiry or investigation, stating that reasonable reliance requires the application of a community standard of conduct.  See Field v. Mans, 516 U.S. 59, 70-71 (1995).  Hitachi argues that Kempf ignores the plethora of facts that demonstrate its reasonable reliance, which included: (1) investigating Kempf's financial status; (2) preparing a transaction analysis; and (3) ordering a separate background report on Kempf that did not show any reason for alarm.

At trial, Hitachi based its non-dischargeability theory on section 523(a)(2)(B), which reads in pertinent part:

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (B) use of a statement in writing –(I) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B) (2010); see Field, 516 U.S. at 64.  This code section requires "reasonable reliance," a term that courts can apply without additional help and is determined on a case-by-

11

case basis. <u>Candland</u>, 90 F.3d at 1471; <u>Gertsch v. Johnson & Johnson (In re Gertsch)</u>, 237 B.R. 160, 170 (9th Cir. BAP 1999); <u>Deutsche Fin. Serv. Corp. v. Osborne (In re Osborne)</u>, 257 B.R. 14, 21 (Bankr. C.D. Cal. 2000). When there is evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on the debtor's representations. <u>Gertsch</u>, 237 B.R. at 170; <u>see</u> <u>Gosney v. Law (In re Gosney)</u>, 205 B.R. 418, 421 (9th Cir. BAP 1996); <u>Candland</u>, 90 F.3d at 1471; <u>La Trattoria, Inc. v. Lansford (In re Lansford)</u>, 822 F.2d 902, 904 (9th Cir. 1987).

Lenders do not have to hire detectives before they are found to have reasonably relied upon the debtor's false financial statements. <u>Gertsch</u>, 237 B.R. at 170; <u>see, e.g.,</u> <u>Candland</u>, 90 F.3d at 1471; <u>Ashley v. Church (In re Ashley)</u>, 903 F.2d 599, 604-05 (9th Cir. 1990). The mere fact that a creditor could have performed a more thorough investigation or could have avoided its loss by independently attempting to verify the information contained in the debtor's financial statement is no defense in a proceeding to except the debt from discharge. <u>See</u> <u>Merch. Bank of Cal. v. Oh (In re Oh)</u>, 278 B.R. 844, 856 (Bankr. C.D. Cal. 2002).

With respect to "red-flags," a creditor is not entitled to rely on obviously false representations; but, minor clues of falsity in a debtor's financial statement, which on the whole had a complete and reliable appearance, do not make a creditor's reliance unreasonable for dischargeability purposes, where the statements asserted that debtors owned significant property which they did not actually own. <u>Gosney</u>, 205 B.R. at 420-21; <u>Gertsch</u>,

237 B.R. at 170; see also Siriani v. Nw. Nat'l Ins. Co. (In re Siriani), 967 F.2d 302, 307 (9th Cir. 1992).

The standard in the Ninth Circuit for "reasonable reliance" does not require adherence to any particular list of factors; rather, as Candland and Gertsch make clear, the bankruptcy court is to make its determination on a case-by-case basis in light of the totality of the circumstances. See Candland, 90 F.3d at 1471; Gertsch, 237 B.R. at 170.

Thus, we will only reverse the bankruptcy court's decision if, after reviewing the entire record, we have a firm and definite conviction that a mistake has been committed. See Anderson, 470 U.S. at 573; Mendez, 367 B.R. at 113; see also Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1992); Candland, 90 F.3d at 1469. If, however, two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson, 470 U.S. at 573-75; see Hansen, 368 B.R. at 874-75.

There is sufficient evidence in the record upon which to affirm the bankruptcy court's decision that Hitachi reasonably relied on Kempf's fraudulent financial statements consistent with the applicable Ninth Circuit legal standard. In reviewing this evidence, the bankruptcy court found that Hitachi was deliberate and careful in considering whether to extend credit to Kempf, because of: (1) the lengthy transaction analysis it prepared; (2) the exchange of emails between Kempf and Hitachi; and (3) the background report on Kempf, which the court found showed little

13

or no reason for alarm. Finally, it noted that there was nothing in the record to suggest that Hitachi did not adhere to its normal business practices. With regards to the Trust, the bankruptcy court found that it was not so obvious to discern the truth as to who owned the Trust because while the tax returns did indicate that Julie Kempf is the only owner, this information was "buried some 18 pages into the returns." Aplt. ER 139. Furthermore, it concluded that there was no evidence to suggest that the tax returns were submitted for the purposes of verifying ownership instead of simply establishing historical earning capacity.

Thus, we affirm the bankruptcy court's decision that Hitachi reasonably relied upon the financial statement in extending credit to CardioCura and Kempf.

## VI. Conclusion

For the reasons set forth, the judgment of the bankruptcy court is AFFIRMED.

14