NOT FOR PUBLICATION          APR 12 2017

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   NC-15-1251-BSKu |
| SATYA DEVI JAGAR, | Bk. No.   4:13-bk-46850-CN |
| Debtor. | Adv. No.   4:14-ap-04037-CN |
| EUGENE SCHNEIDER, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| SATYA DEVI JAGAR, | |
| Appellee. | |

Argued and Submitted on January 19, 2017,
at San Francisco, California

Filed - April 12, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles Novack, Bankruptcy Judge, Presiding

Appearances:     Appellant Eugene Schneider argued pro se; Raymond
R. Miller of the Mission Law Center argued for
appellee Satya Devi Jagar.

Before:  BRAND, SPRAKER[2] and KURTZ, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value.  See 9th Cir. BAP Rule 8024-1.

[2]  Hon. Gary A. Spraker, Chief Bankruptcy Judge for the
District of Alaska, sitting by designation.

Creditor Eugene Schneider appeals a judgment entered in favor of chapter 7[3] debtor, Satya Devi Jagar, respecting Schneider's claims that an alleged debt for prepetition legal fees should be excepted from discharge under § 523(a)(2)(A) and that Jagar's discharge should be denied under § 727(a)(4)(A) and (a)(5). We AFFIRM.[4]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

#### 1. The probate action

Schneider, who is 85 and has been practicing law in California since 1969, was Jagar's attorney in a probate proceeding for her late husband's estate. Jagar does not speak or read English; her native language is Punjabi. She also is not well educated and has never worked outside of the home.

Jagar married her husband in India; they later moved to the United States. Jagar's husband passed away just before Jagar gave birth to their daughter. Jagar's husband had a substantial 401(k) plan with his employer and other assets, but his sons from a prior

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] Schneider did not include any of his trial exhibits in his excerpts of record other than Jagar's bankruptcy petition (Exhibit 10). A few of Schneider's exhibits were attached to Jagar's trial brief, which Schneider also did not include. Attached to Jagar's trial brief are the three retainer agreements at issue (Exhibits 1, 2 and 3) and a copy of the check to Jagar from Schneider's trust account for $32,784.76 (Exhibit 7). We exercise our discretion to take judicial notice of the bankruptcy court's electronic docket and these missing documents. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

marriage contested the validity of Jagar's marriage to their father, which caused years of litigation and expense for Jagar.

Schneider represented Jagar in the probate matters for five years, beginning in 2005. They executed three agreements over the course of the representation, all of which were written in English. In the 2005 Representation Agreement signed by Jagar, Jagar agreed that if she was not appointed as the personal representative of her late husband's estate she would pay Schneider his hourly billing rate of $300. Jagar was never appointed as the personal representative. Schneider testified that he did not discuss the 2005 Representation Agreement with Jagar and did not know if she understood its terms.

The 2007 Representation Agreement, which was initially mailed to Jagar for her signature, indicated that the probate action and dispute about Jagar's status as the wife of her late husband was unresolved and going to trial. Schneider was also trying to get the administrator of Jagar's late husband's 401(k) plan to recognize Jagar as his widow and turn over its proceeds to her. Jagar stood to receive approximately $600,000 from her late husband's estate. In closing, the 2007 Representation Agreement discussed the terms of payment for Schneider's services:

> Last, as you know, our agreement required that I be paid on a monthly basis. I was told you are unable to pay me and my compensation must come out of whatever you receive as a result of the litigation. This is a change in our agreement. I am prepared to accept this change in our contract and to continue representing you so long as the agreement is changed follows [sic]:
>
> **I will be paid my hourly rate. In addition I will receive 7 1/2% of the value of what you receive from any sources as a result of being established as Pyara's widow.** In this context the term 'any sources' refers to the estate and any retirement plans Pyara had.

-3-

> Upon a final distribution order being entered in the estate all sums will become due and will be subject to a one and one-half percent monthly service charge until paid. . . .

Due to Jagar's limited understanding of English, Schneider noted in the 2007 Representation Agreement his assumption that someone would be translating or explaining its terms to her. If that were the case, Schneider requested that both Jagar and the translator sign it. Jagar signed the 2007 Representation Agreement, as did her brother as "translator," and returned it to Schneider. Schneider testified that he never spoke with Jagar about the 2007 Representation Agreement or its terms either before or after she signed it.

The 2009 Representation Agreement addressed Schneider's representation of Jagar in litigation he filed against the administrator of her late husband's 401(k) plan to compel turnover of the funds to Jagar. The payment arrangement for Schneider's fees for this litigation was to be the same as that in the probate action. Jagar signed the 2009 Representation Agreement, but Schneider did not request in that agreement that anyone translate it or that any translator sign it. Schneider testified that he did not discuss the 2009 Representation Agreement with Jagar, but assumed that her brother was translating all documents for her.

Neither Schneider nor Jagar testified as to the outcome of the probate action or other litigation, but Schneider's dischargeability complaint stated that Jagar did receive her late husband's 401(k) funds of over $450,000 and that she was ultimately awarded a total of approximately $600,000 from her husband's estate. Jagar has not disputed this assertion.

-4-

In or around January 2010 Jagar rolled over $300,000 of her late husband's 401(k) plan proceeds to another Individual Retirement Account ("IRA"). It appears that Jagar may have received the 401(k) plan proceeds directly. The record reflects that Schneider received payments on behalf of Jagar from the probate estate's administrator of $102,784.76. Schneider retained $70,000.00 of that amount and sent the balance of $32,784.76 to Jagar on April 10, 2010.

### 2. Schneider's suit for unpaid fees

In March 2013, Schneider filed a collection action in state court against Jagar for alleged unpaid fees. The collection action was at the discovery stage when Jagar filed her bankruptcy case.

## B. Postpetition events

### 1. Jagar's bankruptcy filing

Jagar, with the assistance of counsel (now deceased), filed a chapter 7 bankruptcy case on December 31, 2013. Her certificate of counseling indicated that she received prepetition credit counseling from Abacus Credit Counseling via the internet on December 26, 2013. Jagar listed the IRA rollover account in her Schedule B with a value of $332,824.40, which she claimed exempt. She also listed a counter-claim against Schneider for "overpayment of attorney fees paid to handle probate matter[.]" Besides her mortgage with Wells Fargo, Schneider is Jagar's only other creditor. She listed Schneider in her Schedule F as holding a "disputed" unsecured claim for "Breach of Contract" for $200,000. In her Schedule I, Jagar disclosed her monthly income of $1,700 from social security.

**2. Schneider's dischargeability complaint**

Schneider timely filed a complaint against Jagar objecting to her discharge under § 727(a)(4)(A) and (a)(5) and seeking a determination that the debt for unpaid legal fees was excepted from discharge under § 523(a)(2)(A).

For his § 523 claim, Schneider alleged that Jagar signing and mailing the 2007 Representation Agreement indicated she agreed to Schneider's proposed payment terms, which induced him to provide legal services to her resulting in an award in excess of $600,000 from her late husband's estate. However, during the course of discovery in the collection action, which was three years after the probate action had ended, Jagar had now taken the position that she and her brother understood Schneider's fees to be only 7.5% of the amounts collected, not an hourly rate of $300.00 plus the 7.5% contingency. Schneider alleged that Jagar knew at the time she signed the 2007 Representation Agreement that she did not intend to pay him in accordance with its terms. Schneider alleged that he had no knowledge of Jagar's false representation that she agreed to the contract terms. Schneider alleged that he relied on Jagar's false representations to his detriment resulting in damages of "not less than $135,000."

For his § 727 claims, Schneider alleged that Jagar made a false oath or account by failing to fully advise the court with respect to her income and assets in her bankruptcy papers. He further alleged that Jagar had failed to explain her deficiency of assets to meet her monthly expenses.

The parties submitted trial briefs about a week before trial, but in reviewing the docket it appears that Schneider's brief was

never filed. It is unknown whether the bankruptcy court reviewed his brief, but Schneider has included a copy of it in his excerpts of record. Schneider set forth what he contended were the requirements for a constructive fraud claim, a claim for false pretenses under § 523(a)(2)(A), a claim for actual fraud under California law and a claim for negligent misrepresentation (which has no intent element) under both federal and California law. Schneider argued that the debt for unpaid legal fees should be excepted from discharge under § 523(a)(2)(A) because Jagar never intended to pay him the hourly component of his fees. Schneider contended that Jagar had also stated in her discovery responses to the collection action that neither she nor her brother spoke and communicated in English; Schneider intended to dispute this with other evidence.

For his § 727(a)(4)(A) claim, Schneider contended that Jagar failed to disclose several assets in her petition: (1) rental income; (2) payments to non-attorneys in the one year preceding her bankruptcy filing to assist her in the collection action; (3) support she provided to persons other than herself and her dependents; (4) substantial gifts she received in the two years preceding her bankruptcy filing; (5) income transferred from her daughter's accounts to Jagar's accounts for payment of Jagar's personal expenses; (6) use of her daughter's social security benefits to pay obligations other than for her daughter's food, clothing and shelter; or (7) the name(s) of those who managed or assisted Jagar in managing her finances. Schneider did not articulate any argument for his § 727(a)(5) claim.

///

-7-

### 3. Trial on Schneider's complaint

Schneider presented his case in chief on the first day of what was scheduled to be a two-day trial. Witnesses included Schneider, Jagar (through an interpreter) and Mrs. Deepo Raj.

When questioned about her discovery responses in the collection action, Jagar testified that her brother knew "very little" English. Trial Tr. (July 7, 2015) 22:1-3. Jagar also testified that her brother could "read a little bit" of English. Id. at 59:15. As for Schneider's payment terms, Jagar testified that she understood her brother's explanation of the 2007 Representation Agreement to mean that she would have to pay Schneider 7.5% of the amount she recovered. Jagar further testified that any recovery from the probate action was first paid to Schneider, who then in turn paid Jagar by check in "any amount that he felt was right, and he would give [her] just one part and keep two parts for himself." Id. at 27:10-16. Jagar testified that Schneider was to receive only $45,000 under their agreement (which is 7.5% of $600,000, the approximate total Jagar recovered), but instead he kept $200,000 for himself.

Schneider also questioned Jagar about her prepetition credit counseling and the related certificate filed with her petition. Jagar could not recall any specifics about it, but assumed that her attorney was present when she completed the counseling. Not satisfied with that answer, Schneider posed more questions on the issue. Eventually, the bankruptcy court told him to "move on."

As for the alleged undeclared rental income, Jagar testified that in 2013 she rented a room in her home to a mother and daughter for $600/month; they paid rent for just one month but

-8-

stayed there another three to four months for free. Jagar said she had to pay an attorney $1,500 to evict them. Jagar said she did not claim the $600 as income because she suffered a loss.

When questioned about her finances and maintaining her checking account, Jagar testified that her nine-year-old daughter helps her. Jagar testified that her nephew sometimes helped her financially, and that the $2,000 she paid her attorney in the collection action just prior to her bankruptcy filing may have come from him.

Mrs. Raj, Jagar's sister-in-law, testified that Jagar's brother understood English and could read it.

After Schneider rested, counsel for Jagar moved for a "directed verdict," contending that Schneider had not proven his case under § 523 or § 727. The court adjourned to consider Jagar's motion.

### 4. The tentative judgment on partial findings

The next day, the bankruptcy court read its lengthy tentative ruling into the record, granting Jagar's motion for judgment on partial findings under Civil Rule 52(c).[5] The court found that Schneider had not met his burden of proof on any of his claims.

Schneider attempted to introduce documents he contended established his damages, but the bankruptcy court declined to admit them, ruling that such documents should have been presented

---

[5] Civil Rule 52(c) provides in relevant part:

**Judgment on Partial Findings.** If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

-9-

as part of his case in chief. The court noted that although Schneider had testified as to the amount of damages he claimed in his collection action complaint, Schneider had not provided any detail as to how he arrived at that figure. For his § 523 claim, Schneider argued that he was alleging a claim for "false pretenses," which he argued did not require a showing of fraudulent intent but still satisfied § 523(a)(2)(A).

After hearing additional argument from the parties, the bankruptcy court adjourned to review the false pretenses claim raised by Schneider and to issue a written decision on the Civil Rule 52(c) motion. If the court decided to deny that motion, Jagar was to present her case on July 21, 2015.

**5.    The bankruptcy court's memorandum decision and judgment on partial findings**

On July 15 and 21, 2015, respectively, the bankruptcy court entered its memorandum decision and judgment in favor of Jagar on all claims under Civil Rule 52(c). The court essentially adopted its tentative ruling announced on the record. However, the court also addressed the false pretenses claim raised by Schneider, determining that such claim still requires a showing of fraudulent intent in the Ninth Circuit, which Schneider had failed to prove.

This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court err in denying Schneider's claim

-10-

under § 523(a)(2)(A)?

2.    Did the bankruptcy court err in denying Schneider's claims under § 727(a)(4)(A) and (a)(5)?

## IV. STANDARDS OF REVIEW

The bankruptcy court's findings of fact under Civil Rule 52(c) are reviewed for clear error, while its conclusions of law are reviewed de novo. Kuan v. Lund (In re Lund), 202 B.R. 127, 129 (9th Cir. BAP 1996).

When deciding a motion under Civil Rule 52(c), incorporated by Rule 7052, the bankruptcy court is "not required to draw any inferences in favor of the non-moving party; rather, the [bankruptcy] court may make findings in accordance with its own view of the evidence." Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006). Accordingly, to the extent Schneider contends the bankruptcy court incorrectly found an absence of essential elements for his claims under § 523 and § 727, we review those findings under the clearly erroneous standard. See Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996).

## V. DISCUSSION

Schneider raises a host of arguments on appeal. We start with his more general concerns.

Schneider contends the bankruptcy court erred by relying on Jagar's testimony, while at the same time deeming her not competent to testify. During questioning about her payment agreement with Schneider, Jagar became emotional and her attorney requested a brief recess. Despite the request, Jagar pressed on, answering Schneider's questions. As for Schneider's claim that

-11-

Jagar's prepetition credit counseling certificate must have been falsely filed because she does not read or speak English, the bankruptcy court opined that Jagar's limited testimony on this issue was attributed to her limited education and her "highly emotional state during her time on the witness stand." Mem. Dec. (July 15, 2015) 8:23-25. Although the court took into consideration Jagar's emotional state, it never deemed her incompetent to testify. Nor does the record reflect that Jagar was incompetent to testify.

Schneider also contends the bankruptcy court erred by applying inconsistent standards in making its findings. First, Schneider argues that the court excused Jagar from her obligations under the Representation Agreements because they were written in English, but then took a reverse position, accepting Jagar's explanations regarding the deficiencies in her bankruptcy documents, which were also neither translated nor printed in her native language. As we explain more below, the bankruptcy court did not "excuse" Jagar from her obligations under either the Representation Agreements or her bankruptcy documents; the court simply found that Schneider had failed to prove his claims for fraud under § 523(a)(2)(A) or for a false oath under § 727(a)(4)(A).

**A. The bankruptcy court did not err in denying Schneider's claim under § 523(a)(2)(A).**

**1. Section 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge debts incurred under false pretenses, based on false representations, or based on actual fraud. In particular, to establish a claim under

-12-

§ 523(a)(2)(A), the creditor must prove each of the following five elements by a preponderance of the evidence:

> (1) the debtor made a representation;
>
> (2) the debtor knew the representation was false at the time he or she made it;
>
> (3) the debtor made the representation with the intent to deceive;
>
> (4) the creditor justifiably relied on the representation; and
>
> (5) the creditor sustained damage as a proximate result of the misrepresentation having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010).

### 2. Analysis

The bankruptcy court found that Schneider had not met his burden of proof on the element of intent:

> First, given the defendant's lack of education and illiteracy in English, and the insufficient evidence regarding the strength of her brother's command of the English language, Schneider has not demonstrated that Jagar fully understood the terms of the 2007 and 2009 Representation Agreements and knowingly lured Schneider into representing her, all along not intending to fully pay the fees due him. In addition, since the funds apparently disbursed by Duane Leonard (the probate estate's administrator), were sent to the defendant, care of Schneider, Schneider has not demonstrated by a preponderance of the evidence how the defendant was able to avoid Schneider's collection efforts.

Mem. Dec. (July 15, 2015) 5:23-6:2. The court reasoned that the same analysis applied to Schneider's assertion that Jagar's conduct constituted "false pretenses" as opposed to "actual fraud." In either case, Schneider was required to prove that

-13-

Jagar intended to defraud him, and he did not do so.[6]

Schneider contends the bankruptcy court erred by not applying California contract law, which would not allow Jagar to be excused from the 2007 and 2009 Representation Agreements based on her illiteracy in English or her intentional choice of choosing an incompetent translator. Schneider never raised this argument before the bankruptcy court. In any event, while Schneider's argument might be relevant in a breach of contract action, it matters little for a claim for fraud under § 523(a)(2)(A). In addition, the bankruptcy court did not "excuse" Jagar from the terms of the Representation Agreements, which she never claimed were invalid. The court merely found that Schneider had failed to turn a case for breach of contract into one for fraud.

Schneider also contends that Jagar's testimony established her wrongful intent not to pay him according to the Representation Agreements' terms. The bankruptcy court disagreed. With respect to the 2007 Representation Agreement, which was the primary basis for Schneider's claim, Jagar testified that she believed the agreement limited Schneider's payment to 7.5% of her recovery, even though she signed the agreement and sent it back to Schneider. While her belief was inconsistent with the agreement's express terms, the bankruptcy court found that Schneider had not

---

[6] The bankruptcy court cited Mandalay Resort Group v. Miller (In re Miller), 310 B.R. 185, 201 (Bankr. C.D. Cal. 2004), for the proposition that under Ninth Circuit law the terms "false pretenses" and "false representation" have the same meaning in § 523(a)(2)(A) as the term "actual fraud." While we believe Husky International Electronics, Inc. v. Ritz, 136 S.Ct. 1581 (2016), has implicitly overruled Miller, both Husky International and Bullock v. BankChampaign, N.A., 133 S.Ct. 1754 (2013), instruct that wrongful intent is necessary for a nondischargable claim under § 523(a)(2)(A).

-14-

demonstrated by a preponderance of the evidence that the agreement was fully or accurately translated to her. Although Jagar's brother apparently knew some English and had translated various documents for her, the court was not persuaded based on the testimony that Jagar's brother's command of the English language was sufficient to avoid her apparent confusion or misunderstanding regarding the terms of Schneider's compensation.

In addition, Schneider admitted that he knew of Jagar's illiteracy in English and that he never discussed with Jagar the 2007 or 2009 Representation Agreements or made sure she understood them. Schneider simply assumed that Jagar's brother had accurately translated them to her. As an attorney, it would have been better practice for Schneider to ensure that his client understood how he was to be compensated.

Finally, and what Schneider never sufficiently explained, is how Jagar failed to pay him what was owed when all disbursements from the probate action apparently went through him first. Indeed, the record shows that Schneider received payments totaling $102,784.76 from the probate estate's administrator by checks dated March 28, 2010. From those funds he retained $70,000.00 and sent $32,784.76 to Jagar. Why did he not just keep the amount of funds necessary to satisfy his outstanding bill before paying anything over to Jagar? The 2007 Representation Agreement contemplates that arrangement: "I was told you are unable to pay me and my compensation must come out of whatever you receive as a result of the litigation. This is a change in our agreement. I am prepared to accept this change in our contract . . . ." Jagar testified that Schneider did in fact keep what he believed he was

owed. The fact that all probate disbursements were funneled through Schneider was another basis for the bankruptcy court to find Jagar's lack of intent to defraud.

The bankruptcy court considered Schneider's evidence and found that he had not met his burden to establish Jagar's fraudulent intent. On this record, we cannot say that the court's choice between the two permissible views of evidence was clearly erroneous. See United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949) (a trial court's choice between two permissible views of the evidence is not clearly erroneous where the evidence would support a conclusion either way).

Alternatively, the bankruptcy court found that even if Schneider had demonstrated the requisite intent, he failed to prove the amount of his damages. When asked at trial how much he had been paid to date from the probate action, Schneider stated he did not have that number before him, but he could provide it the following day. Schneider did apparently bring some documents with him the next day that he said established his damages, but the bankruptcy court declined to consider them because Schneider had already rested his case. Schneider also testified that he sent Jagar billing statements every month, but he never submitted them as evidence. Schneider also summarily stated in his dischargeability complaint that his damages were "not less than $135,000," but that is not admissible evidence.

The only evidence of damages, which the bankruptcy court noted, was Schneider's complaint from the collection action which alleged he was owed "$108,010.06 for services rendered, and an additional $91,989.94 on account of fraud committed by defendants"

-16-

(Jagar and her brother) and his testimony as to the contents of that document. The bankruptcy court opined that without any calculation by Schneider, it had little idea how he reached these numbers. As a result, the court could not find that these represented his damages.

Schneider contends that his collection action complaint and his testimony as to the amount of damages alleged in that complaint should have been sufficient evidence of his damages. In essence, Schneider contends that what he stated as his amount of damages in the collection action complaint is a factual allegation that must be presumed to be true. This assertion is contrary to Civil Rule 8, which is applicable to adversary proceedings by Rule 7008. An allegation as to the amount of damages is never presumed true, even if not expressly denied by the defendant in a responsive pleading. See Civil Rule 8(b)(6). Here, Jagar's answer expressly denied Schneider's claimed damages. The fact that Schneider testified that the collection action complaint said what it said did not make his allegation as to damages more true.

In addition, as the plaintiff claiming nondischargeability of an unliquidated debt, it was Schneider's burden to prove with specificity the amount of his damages. The record reflects that Jagar received approximately $600,000 from her late husband's estate. Seven-and-a-half percent of $600,000 is $45,000, which is the amount Jagar testified Schneider should have received. The record reflects that Schneider received at least $70,000 for his services, which suggests that he received not only the agreed 7.5%, but also at least some of his hourly fees. Therefore, it is unclear exactly what amount Jagar did not allegedly pay Schneider

-17-

for his services or, more importantly, how much of the alleged debt was the proximate result of Jagar's fraud and thus nondischargable.

Based on the lack of any concrete evidence of Schneider's actual damages, the bankruptcy court's finding that he failed to prove the amount of his damages was not clearly erroneous. In any event, because the court properly determined that Schneider did not prove a causal relationship between Jagar's alleged false representations and his alleged damages, whether Schneider proved the amount of his damages is of no consequence.

**B.   The bankruptcy court did not err in denying Schneider's claims under § 727(a)(4)(A) and (a)(5).**

Objections to discharge are liberally construed in favor of the debtor and against the objector. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009). For that reason, the objector bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied. Id.

**1.   Section 727(a)(4)(A) and (a)(5)**

Section 727(a)(4)(A) provides that the debtor's discharge may be denied where: (1) the debtor made a false oath in connection with the bankruptcy case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. Retz v. Sampson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010).

A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a "false oath." Id. at 1196. A fact is "material" if it bears a

-18-

relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. In re Khalil, 379 B.R. at 173. Nevertheless, a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A). Id. at 172. An act is done "knowingly" when the debtor acts "deliberately or consciously." Id. at 173. Finally, a false statement or omission is made "fraudulently" when the (1) debtor makes a representation or omission, (2) that at the time the debtor knew was false, and (3) that the debtor made them with the intention and purpose of deceiving creditors. Id.

A debtor's discharge may also be denied if the debtor fails "to explain satisfactorily, . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." § 727(a)(5). To establish a prima facie case under § 727(a)(5), the objector to discharge must demonstrate that: (1) the debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted the debtor no longer owned the assets; and (3) the bankruptcy papers do not reflect an adequate explanation for the disposition of the assets. In re Retz, 606 F.3d at 1205. Once the objector makes a prima facie case, the burden shifts to the debtor to offer credible evidence regarding the disposition of the missing assets. Id. The sufficiency of the debtor's explanation, if any, is a question of fact. See id.

### 2. Analysis

Schneider's complaint failed to provide any specific examples

-19-

of Jagar's false oaths in connection with her bankruptcy papers. His trial brief provided some, but that brief was never filed and it is not clear if the bankruptcy court reviewed it. Nonetheless, the court inferred from the testimony at trial what false oaths Schneider was alleging: (1) Jagar failed to disclose the $600 rental income; (2) Jagar's Statement of Financial Affairs mistakenly stated that her late husband's probate case closed in 2007 as opposed to 2010; (3) Jagar did not list any gasoline or travel expenses in her original Schedule J, but later amended to include this $200 monthly expense; (4) Jagar did not list her daughter's social security income in her original Schedule I or Statement of Financial Affairs; (5) Jagar did not list her ADT, AT&T or Comcast bills on her Schedule F; and (6) Jagar did not take her prepetition credit counseling course.

Overall, the bankruptcy court found that Schneider failed to prove either that these alleged errors or omissions were material or that they were made fraudulently with an intent to deceive creditors; therefore, he had not established a claim under § 727(a)(4)(A).

Schneider raises two arguments here. First, he contends the bankruptcy court gave too much credence to Jagar's prepetition credit counseling certificate (also written in English), and that the court erred by precluding his examination of Jagar on this issue. A review of the record shows that Schneider took ample time to question Jagar about the certificate. Jagar repeatedly stated that she could not recall any specifics about the counseling session, but stated that she may have completed it with her bankruptcy attorney at her office. After extensive

questioning about the certificate, which was leading nowhere, the bankruptcy court finally asked Schneider to "move on" to the next topic. The court ultimately decided to accept Jagar's filed certificate as proof that she had completed the prepetition credit counseling, as opposed to Schneider's unsupported argument that she had not. We do not perceive this finding to be clearly erroneous.

Second, Schneider contends the bankruptcy court erred by overlooking inconsistencies (or even fabrications) regarding Jagar's testimony about her rental income. Jagar testified that she received $600 in rental income in 2013 by renting a room in her home. She also testified that she spent $1,500 for an attorney to evict the non-paying tenant. Jagar explained that she had not reported the $600 rental income in her bankruptcy papers because the venture resulted in a $900 loss. Although we do not have Jagar's bank statements in the record, Schneider contends the $1,500 payment is not reflected in them. When asked about where the money might have come from, Jagar testified that perhaps her nephew gave her the $1,500, which explained the lack of a bank entry.

Schneider contends that if Jagar received $1,500 from her nephew, then she did not lose the $600 because she did not pay the $1,500 out of her money. Thus, apparently, the income existed and should have been reported.[7] The bankruptcy court noted that Jagar

---

[7] Schneider contends another inconsistency is that a post-trial review of the state court record reflects no eviction case in which Jagar was a party. Schneider has asked the Panel to take judicial notice of this fact. Generally, we do not consider facts
(continued...)

-21-

should have reported the $600 as income, regardless of the alleged eviction cost. Ultimately, the court found that Schneider had failed to prove that the "small omission" of the $600 rental income was made with the intent to deceive creditors to satisfy § 727(a)(4)(A). On this record, we conclude that the court's finding as to the rental income was not clearly erroneous.

As for Schneider's § 727(a)(5) claim, which was also not pleaded with any specificity, the bankruptcy court found that no witness had testified as to what assets were at issue and/or unaccounted for. The only evidence before the court were documents indicating that Jagar received funds from Schneider's trust account relating to the probate action. The court found that Jagar had accounted for a majority of the funds she received from her late husband's 401(k), which were rolled over into an IRA and listed by Jagar as exempt. The only other evidence of an asset Jagar had prior to the petition date was presented in the form of two checks, one dated March 28, 2010, made payable to Schneider by the probate estate's administrator for $102,784.76, and the other dated April 4, 2010, reflecting the $32,784.76 Schneider paid to Jagar out of those funds, which she deposited on May 1, 2010. Jagar testified that Schneider kept the $70,000.00 difference.

Jagar's bankruptcy case was filed on December 31, 2013, more

[7](...continued)
presented for the first time on appeal. In addition, Schneider has not provided any grounds for the Panel to take judicial notice of a state court website. Accordingly, Schneider's request is DENIED. However, our consideration of the website's contents would not change the outcome of this appeal.

than three years after she received the funds from Schneider. Given that Jagar has two children, owns a home, and her only other income is social security, the bankruptcy court found that her receipt of these funds was too remote from the petition date to support a claim under § 727(a)(5). Schneider does not raise any specific argument with respect to the court's findings on this claim. Therefore, he has waived any such argument. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). In any event, we do not perceive the court's findings here to be illogical, implausible or without support in the record.

## VI. CONCLUSION

The bankruptcy court did not err when it granted Jagar's motion under Civil Rule 52(c) and denied Schneider's claims. Accordingly, we AFFIRM.