

FILED

APR 30 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>GIANG THANH DONG and MARY<br>TRAN NGUYEN,<br>　　　　　Debtors. | BAP No. CC-24-1070-FSG<br><br>Bk. No. 8:23-bk-10014-SC |
| GIANG THANH DONG; MARY TRAN<br>NGUYEN; CA PROPMGT LLC,<br>　　　　　Appellants,<br>v.<br>THOMAS H. CASEY, Chapter 7 Trustee,<br>　　　　　Appellee. | Adv. No. 8:23-ap-01035-SC<br><br>MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

In an action brought by the chapter 7[1] trustee of the estate of debtors

Giang Thanh Dong and Mary Tran Nguyen ("Debtors"), the bankruptcy

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

court entered summary judgment avoiding transfers made by Mary[2] under § 548(a)(1)(A) and (a)(1)(B). The court allowed the trustee to recover under § 550(a), not only the transferred property, but also the proceeds of a loan secured by the transferred property and certain other property and assets that were acquired with the loan proceeds.

Mary appeals, arguing that the court should not have granted summary judgment on claims turning on her intent and that her brother David (who, for a time, owned the property with Mary) should have been joined as a necessary party.

We AFFIRM the portion of the judgment that provided for avoidance of the transfer. But because § 550(a) permits recovery only of the transferred property in kind or a money judgment for the value of the property, we VACATE the portion of the judgment that allowed not only for the recovery of the transferred property, but also assets generated by the transferred property, i.e., the loan proceeds and real properties purchased with those proceeds. We REMAND so the bankruptcy court can consider whether there is any other legal basis for that recovery.

---

[2] For ease of reference and to prevent confusion, we refer to Mary Tran Nguyen as "Mary" and her brother David Nguyen as "David." No disrespect is intended.

2

## FACTS[3]

### A.    Prepetition events.

In late 2007, Mary's parents, as trustees of the V & P Family Trust, Dated April 8, 2006 (the "V & P Trust"), executed a grant deed transferring real property located in Tustin, California (the "Tustin Property") to Mary and her brother, David, as trustees of the same V & P Trust.

Years later, Mary and her husband, Mr. Dong, became embroiled in a dispute with Jonathan and Tracy Dickman, whose investment accounts Mr. Dong managed. The Dickmans eventually sued Debtors in state court, asserting causes of action for breach of contract and breach of fiduciary duty and requesting damages in the amount of $2.5 million. About two months after the Dickmans sued Debtors, the V & P Trust executed a "corrective deed" transferring the Tustin Property to Mary and David as tenants-in-common, granting each a fifty percent interest in the property.

In December 2021, CA PROPMGT LLC ("CPM") was registered as a limited liability company. According to CPM's operating agreement, Mr. Dong was the Chief Executive Manager and Mary and David were fifty percent members of CPM.

After the creation of CPM, the parties executed a Declaration of Land Trust Agreement (the "Trust Agreement") creating the Williams Land

---

[3] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

Trust. The Trust Agreement identified Mary and David as grantors and beneficiaries and CPM as trustee. Schedules A and B of the Trust Agreement identified the Tustin Property as trust property. In accordance with the Trust Agreement, Mary and David executed a Trust Transfer Deed transferring the Tustin Property into the Williams Land Trust.

In March 2022, Mary and David, individually and for CPM, executed a promissory note in favor of HomeBridge Financial Services, Inc. ("HomeBridge") for the principal amount of $850,000. Around the same time, CPM, in its capacity as trustee of the Williams Land Trust, transferred the Tustin Property back to CPM. Upon transfer back to CPM, CPM executed a Deed of Trust against the Tustin Property in favor of the lender.

Soon thereafter, CPM used $427,613.25 of the loan proceeds to acquire two parcels of real property in Oklahoma City, Oklahoma (the "Oklahoma Properties"). The remainder of the loan proceeds were used to pay expenses in connection with the purchase of the Oklahoma Properties or transferred into a TD Ameritrade account held by CPM.

B.   **Debtors' bankruptcy filing and the adversary proceeding.**

On January 5, 2023, Debtors filed a joint chapter 7 petition. In their concurrently filed schedules, Debtors identified an interest in the Tustin Property as well as a $847,910 lien against the Tustin Property in favor of Shellpoint Mortgage Servicing. Debtors also identified the Dickmans' $2.5 million state court litigation claim.

In amended schedules, Debtors disclosed a fifty percent interest in CPM. Debtors also identified the Oklahoma Properties and the TD Ameritrade account, noting that those assets were owned by CPM.

In May 2024, Thomas H. Casey, as chapter 7 trustee (the "Trustee"), filed a complaint against Debtors and CPM. Among other things, he sought to recover the Tustin Property from the Williams Land Trust and CPM as fraudulent transfers made with the intent to hinder, delay, or defraud their creditors under § 548(a)(1)(A), and that the transfers were constructively fraudulent under § 548(a)(1)(B). The Trustee did not name David as a defendant in this adversary proceeding. The Trustee sought a judgment avoiding the multiple transfers of the Tustin Property from Mary to CPM and the Williams Land Trust. The Trustee further sought to recover for the benefit of the estate the Tustin Property, the Oklahoma Properties, and any remaining loan proceeds.

The Trustee filed a motion for summary judgment on his claims (the "MSJ"). Debtors opposed the MSJ on three grounds.

First, Debtors contended that David held a fifty percent ownership interest in the Tustin Property, was a beneficiary of the Williams Land Trust, and held a fifty percent membership interest in CPM. Thus, Debtors asserted that the Trustee was required to join David as a necessary party to this adversary proceeding pursuant to Civil Rule 19.

Second, Debtors argued that the Trustee did not provide evidence that Mary acted with intent to hinder, delay, or defraud when she

5

facilitated the subject transfers. In support of this contention, Mary submitted a declaration in which she asserted that she "never intended to defraud anyone." Mary further asserted that the original transfer from the V & P Trust to Mary and David was made because she was unable to get a loan without first changing title to the Tustin Property and because counsel advised her that they had to execute the corrective deeds to pursue financing.

Third, Debtors contested the "constructively fraudulent" transfer claims, but they have abandoned those arguments on appeal.

Before the hearing on the MSJ, the court issued a tentative ruling in which it requested clarification from the Trustee on a few issues, including: (i) the Trustee's authority to avoid transfers involving non-debtor third parties, i.e., David; and (ii) Debtors' asserted factual dispute regarding Mary's intent.

At the hearing on the MSJ, the Trustee clarified that he was not seeking to avoid the transfers of David's fifty percent interest in the Tustin Property, instead only requesting a judgment avoiding the transfers of Mary's fifty percent tenancy-in-common interest.

In April 2024, the court issued its findings of fact and conclusions of law related to the MSJ. The court found that the Trustee had met its burden of proving Mary's actual intent to hinder, delay, or defraud because the badges of fraud were present. Specifically, the bankruptcy court found that: (i) Mary made the subject transfers after the Dickmans sued;

6

(ii) Debtors' schedules indicated minimal assets compared to the value of the Tustin Property; (iii) Debtors admitted that the Dickman litigation forced them into bankruptcy; and (iv) Mary is a beneficiary and trustee of the Williams Land Trust. The court held that Mary's conclusory statement that she lacked intent to defraud was "inapposite, based on the presence of badges of fraud," and, as a result, Debtors did not raise a genuine issue of material fact with respect to Mary's intent.

In addition, the court held that the subject transfers were constructively fraudulent. Thus, the court concluded that the transfers could be avoided under § 548(a)(1)(B) as well as § 548(a)(1)(A). The court also concluded that David was not a necessary party because the Trustee was not seeking to avoid the transfers of David's interests in any assets.

The court entered a judgment in accordance with its findings of fact and conclusions of law. The initial judgment allowed the Trustee to recover Mary's fifty percent interest in: (i) the Tustin Property; (ii) the loan proceeds; and (iii) the Oklahoma Properties. Subsequently, the court entered an amended judgment that again allowed for the Trustee to recover Mary's fifty percent interest in the Tustin Property, and also allowed the Trustee to recover all of the loan proceeds generated by financing the Tustin Property and both Oklahoma Properties in full (the "Amended Judgment").

Debtor timely appealed. After the Panel held oral arguments, the bankruptcy court issued an "Indicative Ruling and Order Proposing to

7

Vacate the Order Granting Motion for Summary Judgment" (the "Indicative Ruling"). In the Indicative Ruling, the court noted that the portions of the Amended Judgment allowing the Trustee to recover 100% of the Oklahoma Properties and the remaining loan proceeds were entered in error. The court stated that it intended to amend the judgment only to add a parcel number identifying the subject property, and that the original judgment contained the accurate remedy determination by the court, i.e., allowing recovery of only fifty percent of the Tustin Property, the Oklahoma Properties, and the loan proceeds, representing Mary's fifty percent interest in those assets. The court indicated that if the Panel remanded, the court would vacate the Amended Judgment.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (H). We have jurisdiction over the bankruptcy court's determination under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in holding on a motion for summary judgment that Mary made the subject transfers with "actual intent to hinder, delay, or defraud" under § 548(a)(1)(A)?

2. Was David a necessary party to the adversary proceeding under Civil Rule 19(a)(1)?

3. Did the bankruptcy court err in its determination regarding recovery under § 550(a)?

8

## STANDARD OF REVIEW

We review the bankruptcy court's decision to grant or deny a motion for summary judgment de novo. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000). We apply the same standards used by the bankruptcy court under Civil Rule 56, as made applicable by Rule 7056. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999). Facts determined for summary judgment proceedings are not entitled to the clearly erroneous standard of appellate review. *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 25 (9th Cir. BAP 1997), *overruled on other grounds as recognized by Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 n.2 (9th Cir. BAP 2007); *Gertsch v. Johnson & Johnson, Fin. Co. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).

## DISCUSSION

Sections 548(a)(1)(A) and (B) allow a bankruptcy trustee to avoid fraudulent transfers of a debtor's property. Section 548(a)(1)(A) requires a finding that the debtor transferred property "with actual intent to hinder, delay, or defraud," while § 548(a)(1)(B) allows for avoidance of transfers without such a finding if certain conditions were present at the time of transfer.

Section 550(a), in turn, governs recovery after a transfer is avoided. The statute allows for recovery of either "the property transferred, or, if the court so orders, the value of such property . . . ."

9

On appeal, Debtors dispute the court's conclusion that Mary acted "with actual intent to hinder, delay, or defraud" for purposes of § 548(a)(1)(A). But Debtors do not address the court's alternative conclusion that the subject transfers could be avoided as constructively fraudulent transfers. Thus, as we discuss in section B, any error regarding the finding of intent would be harmless; in any event, Mary's declaration was insufficient to create a genuine issue of material fact regarding Mary's intent. As we discuss in section C, Debtors' arguments under Civil Rule 19 are also not persuasive.

Nevertheless, as we discuss in section D, the court's judgment allowed the trustee to recover, not only the "property transferred" (the Tustin Property), but also other properties and assets acquired using the transferred property, i.e., the proceeds of the loan secured by the Tustin Property and the Oklahoma Properties that were bought with the loan proceeds. Section 550(a) does not authorize recovery of the additional properties and assets.

**A.    Summary judgment standard.**

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute over material facts is genuine where a reasonable jury

10

could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant has come forward with uncontroverted facts entitling it to relief, the burden shifts to the nonmovant to establish that there is a specific and genuine issue of material fact to warrant a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 n.3 (1986) (Brennan, J., dissenting). The nonmovant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citation omitted). Conjecture, surmise or "metaphysical doubt" by the nonmovant of the movant's assertions will not defeat a summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Gertsch*, 237 B.R. at 165 (even in cases where intent is at issue, summary judgment may be appropriate if the nonmovant "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (citation omitted)).

In deciding whether material factual issues exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. But the court must do so only if a nonmoving party submits specific evidence that contradicts a fact specifically averred by the moving party. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). If a motion for summary judgment is properly

11

supported and the nonmovant does not set forth specific facts showing a genuine issue for trial, the court must grant summary judgment. Civil Rule 56(a); Rule 7056.

**B.    The bankruptcy court did not err in granting summary judgment on the avoidance issues.**

Debtors first dispute the bankruptcy court's conclusion that Mary effectuated the subject transfers with fraudulent intent. They argue that, because Mary submitted a declaration denying that she harbored fraudulent intent, the court should not have granted summary judgment on that issue.

Even if the bankruptcy court erred in holding that there was no genuine issue of material fact regarding Mary's intent, the error would be harmless. Debtors did not appeal the court's holding that the subject transfers were constructively fraudulent under § 548(a)(1)(B). Section 548(a)(1)(B) does not require a finding of intent. Reversal of the court's judgment of actual fraud under § 548(a)(1)(A) would not disturb the court's findings and conclusions regarding **constructive** fraud, and the Trustee would still be able to avoid all the same transfers and recover all the same assets.

In any event, the bankruptcy court did not err in concluding that there was no genuine issue of material fact regarding Mary's intent. Although Debtors are correct that "[q]uestions involving a person's state of mind . . . are **generally** factual issues inappropriate for resolution by

12

summary judgment," this is not a *per se* rule. *Lovering Tubbs Tr. v. Hoffman (In re O'Gorman)*, 115 F.4th 1047, 1058 (9th Cir. 2024) (emphasis added) (quoting *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)). "[W]here the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment." *Id.*

As explained by the Ninth Circuit, where the plaintiff provides evidence of fraud, and the defendant fails to carry its "burden of raising a genuine dispute that there was 'significantly clear' evidence of a 'legitimate supervening purpose' for the transfer," summary judgment is appropriate. *Id.* at 1058-59 (quoting *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 806 (9th Cir. 1996)). Because "[i]t is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors," bankruptcy courts "frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud." *Id.* at 1058 (quoting *In re Acequia, Inc.*, 34 F.3d at 805-06).

This Panel has affirmed several orders granting motions for summary judgment on claims that involve a finding of fraudulent intent. *See, e.g.*, *Kresock v. U.S. Tr. (In re Kresock)*, BAP No. AZ-20-1270-BSL, 2021 WL 6097523, at *10 (9th Cir. BAP Dec. 22, 2021) ("conclusory statements of fact and self-serving declarations are insufficient to create genuine issues of material fact") (citing *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir.

13

1989)); *Stasz v. Gonzalez (In re Stasz)*, BAP No. CC-06-1380-BPaMa, 2007 WL 7370101, at \*5 (9th Cir. BAP Aug. 9, 2007) (no genuine issue of material fact regarding intent where nonmoving party provided only a "bare assertion to the contrary in her declaration"); *Sarp v. Mork (In re Sarp)*, BAP No. WW-06-1089-SPaMo, 2007 WL 7540976, at \*5 (9th Cir. BAP Apr. 18, 2007) ("self-serving, unsubstantiated statements" by the nonmoving party regarding his intent were insufficient "[w]hen stacked against the very substantial evidence presented by the trustee"); *see also Joudeh v. Truppa (In re Truppa)*, BAP No. CC-16-1281-KuFL, 2017 WL 1533381, at \*9 (9th Cir. BAP Apr. 27, 2017) (aggregating additional cases where the Panel has affirmed a bankruptcy court's finding of fraudulent intent on a motion for summary judgment).

Here, as in the cases referenced above, the only evidence offered by Mary was a self-serving statement that she did not intend to defraud anyone. Mary did not substantiate this conclusory statement with other evidence, rebut the Trustee's evidence regarding the badges of fraud, or provide an alternative narrative regarding the purpose behind the subject transfers. Under the authorities above, this was insufficient to raise a genuine issue of material fact regarding Mary's intent.

Further, the only explanation that Mary offered regarding her intent related to the transfer of the Tustin Property from the V & P Trust to Mary and David. Mary explained that an attorney advised the family to transfer title so they could obtain a loan. However, the original transfer from the V

14

& P Trust to Mary is not a subject of this adversary proceeding; the Trustee could not avoid that transfer because it was a transfer **to** Debtors. As a result, Mary's intent in connection with this transfer is irrelevant. Mary's declaration did not contradict the overwhelming circumstantial evidence that she and David transferred the Tustin Property to CPM and the Williams Trust in order to protect that property from the creditors of Mary and her husband, Mr. Dong.

Debtors assert that the bankruptcy court was obligated to hear Mary's testimony at trial before making any findings regarding Mary's intent. They are incorrect. The court has no such obligation unless a nonmoving party raises a genuine issue of material fact. Further, Debtors have not articulated any testimony they would offer at trial that would defeat the Trustee's evidence regarding intent. At best, Debtors' declarations and arguments amount to "metaphysical doubt," which "will not defeat a summary judgment motion." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[4]

The court did not err in holding that Debtors did not raise a genuine issue of material fact regarding Mary's intent.

---

[4] Debtors also argue that courts cannot make credibility determinations at the summary judgment stage. That may be true as a general proposition, but the bankruptcy court did not make any findings of credibility. Instead, the court was entitled to disregard Mary's testimony because she only attempted to explain a different transfer and did not explain the questioned transfers at issue.

**C.    David was not a necessary party for purposes of Civil Rule 19(a).**

Pursuant to Civil Rule 19(a)(1), "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" where the following is true:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)[.] The determination is heavily influenced by the facts and circumstances of each case." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (quoting *N. Alaska Env't Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986)).

Although Debtors cite to all three subsections of Civil Rule 19(a)(1) as bases for requiring the joinder of David as a party to this adversary proceeding, Debtors' argument that David would somehow be prejudiced by this litigation pertains only to Civil Rule 19(a)(1)(B)(i). Debtors do not contend that the bankruptcy court was unable to accord complete relief

16

among the Trustee and Debtors. *See Official Comm. Of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008) (holding that the inquiry under Civil Rule 19(a)(1)(A) is limited to whether the court can grant complete relief to existing parties and the "effect a decision may have on the absent party is not material"). Nor do Debtors assert that excluding David places Debtors at risk of incurring inconsistent obligations.

With respect to joinder under Civil Rule 19(a)(1)(B)(i), courts "focus[] on the prejudice to the absent party if the litigation proceeds in its absence." *Id.* "The absentee must 'claim a legally protected interest relating to the subject matter of the action,' and the impact of any adjudication must be 'direct and immediate.'" *Id.* (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 407 (3d Cir. 1993)).

Debtors have not articulated an impact on David that is "direct and immediate" and "legally protected." Debtors' sole argument is that David holds a fifty percent interest in the Tustin Property, that he did not want to be a co-owner with the Trustee, and that he feared that the Trustee would seek to sell both his interest and Mary's interest in the Tustin Property pursuant to § 363(h). Debtors' argument fails because David has no "legally protected" right in not becoming a co-owner with the Trustee. When Mary and Mr. Dong filed their bankruptcy petition, all of their interests in

17

property became property of their bankruptcy estate by operation of law.[5] This means that Mary's interest in CPM and the Williams Land Trust, and her indirect interest in the Tustin Property and the Oklahoma Properties, came under the control of the Trustee, whether David likes it or not.

During the hearing on the MSJ, counsel for Debtors clarified that David's main concern was the potential for sale of the Tustin Property. But the Trustee could not sell both Mary's and David's interests in the Tustin Property without commencing and prevailing in a separate adversary proceeding under § 363(h) and Rule 7001. David would be free to assert any rights David may have in the Tustin Property in that adversary proceeding.

Because Debtors have not articulated any "legally protected" impact on David, either before the bankruptcy court or before this Panel, the exclusion of David from this adversary proceeding did not run afoul of Civil Rule 19(a)(1).

## D.    The legal basis of the court's recovery decision is unclear.

Section 550(a) provides that, if the trustee successfully avoids a fraudulent transfer, the trustee may recover "the property transferred, or, if the court so orders, the value of such property." In other words, the trustee can recover either the transferred property itself or a money judgment for its value. But in this case, the bankruptcy court allowed the Trustee to

---

[5] Although there are some statutory exclusions from the property of the estate, Debtors do not contend that any exclusion applies to any of those property interests.

18

recover "the property transferred" (Mary's interest in the Tustin Property) and additional assets (the loan proceeds generated by the Tustin Property and the Oklahoma Properties purchased with those proceeds).

The court did not provide a legal basis for its allowance of recovery beyond the Tustin Property or its value. In both the original and the Amended Judgment, the court references only § 550(a). However, the plain language of § 550(a) expressly limits recovery to the transferred asset or a money judgment for its value. Section 550(a) does not provide for the recovery of what one might call proceeds of the transferred asset, such as money borrowed against the transferred property after the transfer, or other properties acquired with those loan proceeds.

There may be other legal grounds on which a trustee could recover the proceeds of a fraudulently transferred property, but neither the Trustee nor the bankruptcy court articulated them. The bankruptcy court may address any such alternative theories on remand. For purposes of this appeal, it is sufficient to say that § 550(a), standing alone, does not permit recovery of anything other than the transferred property or a money judgment for its value.

Even if there is a legal theory on which the Trustee could recover the proceeds of the Tustin Property, we see no basis on which the Trustee could recover all of those proceeds. This is because the Trustee can only avoid the transfer of Mary's fifty percent interest in the Tustin Property. Allowing recovery of fifty percent of the transferred property but 100% of

19

its proceeds is both illogical and unjust to David, who owned the other fifty percent of the Tustin Property.

As we have noted, the bankruptcy court has issued an Indicative Ruling stating that, if it had jurisdiction to do so, it would vacate the Amended Judgment. We are unwilling to remand the matter to the bankruptcy court without providing further guidance, because simply vacating the Amended Judgment could simultaneously go too far and not far enough.

The Indicative Ruling may go too far because it provides that the court will vacate the Amended Judgment in its entirety. But the court's determination on the avoidance issues was not error, so there is no reason to vacate that aspect of the decision.

The Indicative Ruling does not go far enough because it would not explicitly address both issues concerning the court's recovery decision. The Indicative Ruling demonstrates the court's understanding that the Trustee cannot recover the entirety of the Oklahoma Properties and the loan proceeds because he was only entitled to avoid the transfer of Mary's fifty percent interest in the Tustin Property. But the Indicative Ruling does not address the point that § 550(a) does not authorize the recovery of any "proceeds" of a fraudulently transferred asset.

Consequently, we remand this matter for the bankruptcy court to reconsider what the Trustee is entitled to recover and decide whether there is a legal basis on which the Trustee can recover anything other than

20

Mary's interest in the Tustin Property itself or a money judgment for the value of that interest.[6]

## CONCLUSION

The bankruptcy court did not err in concluding that Debtors did not raise a genuine issue of material fact regarding Mary's intent and that David was not a necessary party to the adversary proceeding. We therefore AFFIRM the court's judgment with respect to those conclusions. However, the bankruptcy court's determination regarding recovery of assets exceeded the scope of § 550(a), and it is unclear if the bankruptcy court relied on alternative theories allowing for the recovery of assets beyond what is allowed under § 550(a). We therefore VACATE the portion of the court's judgment related to recovery under § 550(a) and REMAND this matter for further proceedings conforming to this Memorandum.

---

[6] On March 7, 2025, the Trustee filed a motion before this Panel for leave to correct the Amended Judgment entered by the bankruptcy court. Because we are vacating that judgment in part, we DENY the Trustee's motion as moot.